**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TONY C. SALKELD,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:05-00225** |
| **v.** | : | **(VANASKIE, C.J.)** |
| | | **(MANNION, M.J.)** |
| **FRANKLIN J. TENNIS,** | : | |
| **Superintendent, S.C.I. Rockview,** | | |
| **FRANK M. DOUGHERTY,** | : | |
| **Business Manager, S.C.I.** | | |
| **Rockview, and ALL OTHERS** | : | |
| **WORKING IN THE MAILROOM** | | |
| | : | |
| **Defendants** | | |
| | : | |

## REPORT AND RECOMMENDATION

Before this court is defendant Tennis's and Dougherty's motion to dismiss the plaintiff's amended complaint (Doc. No. 37) and the plaintiff's motion for a temporary restraining order enjoining the defendants and their employees from opening the plaintiff's privileged legal mail. (Doc. No. 18).

## I.    Procedural History

Plaintiff Salkeld, an inmate at the State Correctional Institution at Rockview ("SCI-Rockview), Bellefonte, Pennsylvania, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on February 2, 2005, by filing a complaint against defendants Tennis, the superintendent of SCI-Rockview, Dougherty, the business manager of SCI-Rockview, and "all other's working in the mail room" at SCI-Rockview, individually and in their official capacities.

(Doc. No. 1.)  He alleges that the defendants violated his constitutional right to access to the courts.  (Doc. No. 1.)

On February 11, 2005, the plaintiff filed an application to proceed in forma pauperis and an authorization form. (Doc. Nos. 9 & 10.)  Consequently, the court on February 15, 2005, ordered that process shall issue.  (Doc. No. 12.)

Defendants Tennis and Dougherty waived service on February 25, 2005, and their responsive pleadings were due by April 26, 2005.  (Doc. No. 14.)  They filed a motion to dismiss on April 26, 2005, and submitted their brief in support on May 12, 2005.  (Doc. Nos. 15 & 19.)

On May 11, 2005, the plaintiff filed a "petition to restrain S.C.I. Rockview from opening 'privileged' mail concerning legal issues."  (Doc. No. 18.)  On June 7, 2005, the plaintiff filed what he styled a "motion to strike defendants motion to dismiss."  (Doc. No. 23.)  Because of the nature of the so-called motion, the court construed it as a brief in support of the motion for a restraining order.

The plaintiff filed an amended complaint and a brief in support of the amended complaint on June 7, 2005. (Doc. No. 24.) The amended complaint reiterates the claims and legal arguments of the original complaint, but asks for different relief.  The amended complaint supersedes the original complaint. Washer v. Bullitt Co., 110 U.S. 558, 561-62 (1884) ("When a petition is amended by leave of the court, the cause proceeds on the amended

2

petition."); <u>Snyder v. Pascack Valley Hosp.</u> 303 F.3d 271, 276 (3d Cir. 2002); <u>see also</u> CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 6 FEDERAL PRACTICE AND PROCEDURE 2d § 1476 (1990).

The court, on December 14, 2005, ordered the plaintiff to serve the amended complaint on the defendants and the defendants to respond to the plaintiff's motion for a restraining order and amended brief or suffer having the plaintiff's motion deemed unopposed and their motion to dismiss held in abeyance until they complied with the order.  (Doc. No. 33.)  Both parties complied.  The plaintiff filed a certificate of service for the amended complaint on December 21, 2005.  (Doc. No. 35.)  Defendants Tennis and Dougherty filed a brief in opposition to the plaintiff's motion for a restraining order on December 28, 2005, a motion to dismiss the amended complaint on December 30, 2005, and a brief in support of the motion to dismiss the amended complaint on January 9, 2006.  (Doc. Nos. 36, 37, & 38.)

On January 11, 2005, the plaintiff filed a "motion to dismiss defendant's motion to dismiss" as untimely filed.  (Doc. No. 39.)  The court denied the motion, and accepted the defendants' brief as filed.  (Doc. No. 41.)

## II.    Standard of Review

Defendant Tennis' and Dougherty's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6).  This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can granted.  Dismissal should only occur where it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Accordingly, dismissal is appropriate "only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint."  Trump Hotel and Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998) (citing ALA, Inc. v. CCair, Inc., 29 F.3d 855, 859 (3d Cir. 1994)).

In deciding a motion to dismiss, the court should generally consider only the allegations contained in the complaint, the exhibits attached to the complaint, matters of public record, and "undisputably authentic" documents that plaintiff has identified as the basis of his claim.  See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

When considering a motion to dismiss under Rule 12(b)(6), the important inquiry is not whether the plaintiff will ultimately prevail on the merits of his claim, but only whether he is entitled to offer evidence in support of them.  Scheuer v. Rhodes, 416 U.S. 233, 236 (1974).

### III.   Discussion

The plaintiff argues that the defendants are liable for violating his constitutional rights because the defendants refused to grant credit to his inmate account to post documents concerning a pending legal action and that the policy under which the defendants denied him credit is likewise unconstitutional.  The plaintiff's theory of liability is premised on the following facts submitted by the plaintiff, which the court must accept as true for purposes of considering the motion to dismiss:  The plaintiff appealed to the Pennsylvania Superior Court an order entered in June 2004 in a civil lawsuit by the Pennsylvania Court of Common Pleas, Venango County.  (Doc. Nos. 24 & 25.)  On July 14, 2004, the Court of Common Pleas ordered the plaintiff to file a "Concise Statement of Matters Complained of on Appeal" no later than fourteen days after entry of the order.  (Doc. Nos. 24 & 25.)

According to the plaintiff, he only became aware of the order on July 27, 2004, and he posted the statement in the prison mailbox that evening, but the document was returned to him the next day because of insufficient funds to cover postage, in his inmate account.  (Doc. No. 24.)  The plaintiff reposted the statement on July 28, 2004, but it was again returned to him because of insufficient funds.  At least one memorandum covering the plaintiff's returned mail was signed by defendant Dougherty.  This process continued every day until August 5, 2004. (Doc. Nos. 24.)  Defendant Dougherty stated in a memorandum attached to the returned mail that the mail was not posted

because the plaintiff had a "negative account balance" in his inmate account, is not "indigent as defined by DOC policy," and would not be considered indigent because he was a pro se litigant.  (Doc. No. 25.)  On August 5, 2004, the plaintiff allegedly received an order from the Court of Common Pleas "waiv[ing] all issues regarding his appeal" because of his failure to submit the required statement.  (Doc. Nos. 24 & 25.)

On August 5, 2004, the plaintiff filed an "Inmate's Request to Staff Member" to discover why his mail had not been posted and "to further advise prison officials that they are not to interfere with legal-mail because it violates Plaintiffs' right to access the courts."  (Doc. Nos. 24 & 25.)  Defendant Dougherty responded that he is prohibited by DOC policy from "anticipat[ing] postage" for non-indigent inmates.  (Doc. No. 25.)

Also on August 5, 2004, the plaintiff filed a grievance with defendant Dougherty.  (Doc. Nos. 24 & 25.)  Defendant Dougherty denied the plaintiff's grievance on the ground that the plaintiff was not indigent under DOC policy. He further informed the plaintiff that he is allowed ten free postings per month which can be used for legal mailing, but apparently had spent most of his money in the commissary on July 13, 2004. Defendant Dougherty concluded, "If you had legal mailings coming due consideration should have been made before you went to commissary."  (Doc. No. 25.)  The plaintiff appealed the grievance to final review, including an intermediate review to defendant Tennis as superintendent of SCI-Rockview, and each time the grievance was

6

denied on the same ground as the initial review.  (Doc. Nos. 24 & 25.)  The DOC's chief grievance officer, in upholding the prior reviews, warned the plaintiff, "You need to be more responsible with the money on your account. If you knew you had legal mail to send out, you should have taken care of that before going to commissary."  (Doc. No. 25.)

The policy whose procedures are at the heart of this controversy, DC-ADM 803, governs the handling of inmate mail.  It provides that inmates, at their own expense, may without limit send mail to and receive mail from the public, their attorneys, or public officials, with certain exceptions concerning other convicts or victims.  DC-ADM 803 § VI(A)(1)-(3), (5).  Inmates are also allowed ten free, first class letters per month.  Id. at § VI(A)(4).  In addition, indigent inmates are provided with free stationery and pens and may "anticipate," or charge to their inmate accounts against future credits, first-class postage up to $10.00 per month, with limited exceptions for other types of postage.  Id. at § VI(C).  Indigence is defined by DC-ADM 803 as when an inmate has no more than $10.00 in any account "at all times during the 30 days preceding the date on which" the inmate requests indigent status.  Id. at § IV(H).  DC-ADM 803 also provides that "[a]ny inmate who has not made a good faith effort to manage his/her money so as to be able to pay the necessary costs of litigation himself/herself is not indigent."  Id.

During the thirty-day period prior to this controversy, from July 9, 2004, to July 29, 2004, the plaintiff's inmate account began with a negative balance

of -$2.58 and ended with a negative balance of -$15.05.[1]  (Doc. No. 25, exhibit 9.)  The plaintiff was employed at SCI-Rockview, and, on July 9, 2004, he was paid wages of $38.28, which left a balance of $35.70.  The plaintiff's wages were subject to a twenty-percent and a ten-percent assessment for restitution under Pennsylvania law, which left the plaintiff $24.21.  On July 13, 2004, the plaintiff spent all but $.20 at the commissary.  On July 29, 2005, the plaintiff paid his prison cable television bill of $15.25, which left him with a negative balance of -$15.05.  (Doc. No. 25, exhibit 9.)  Thus, even though the plaintiff began and ended the thirty-day period preceding his attempts to post his statement to the Court of Common Pleas with a negative balance, he did not qualify as indigent under DC-ADM 803 because he had a balance in excess of $10.00 during part of that period.

The plaintiff argues that, in spite of DC-ADM 803, the DOC should have anticipated his postage for his legal mail.  By denying him postage credit, which prevented him from fulfilling the Court of Common Pleas's order and waived his appeal, the plaintiff asserts that the defendants violated his constitutional right to access to the courts.  Furthermore, the plaintiff argues that DC-ADM 803 is unconstitutional because it limited his access to the

---

[1]These are the first and last dates of transactions during this period. The plaintiff's financial records, which he submitted, cover a longer period, from April 9, 2004, to September 29, 2004, but for the purposes of this Report and Recommendation the court will only consider the thirty days prior to the plaintiff's first attempt to post his statement to the Court of Common Pleas through August 5, when the plaintiff ceased attempting to post his statement.

8

courts as a non-indigent inmate.  As a result of these allegations, the plaintiff seeks a declaratory judgment that the defendants' actions and DC-ADM 803 are unconstitutional, as well as a preliminary and permanent injunction enjoining the defendants and SCI-Rockview from refusing to post legal mail. He also seeks an injunction prohibiting the defendants or any DOC personnel from retaliating against him.  He further seeks compensatory damages of $1,000 "for the loss [of] Plaintiffs' legal rights" and punitive damages of $1,000 "for mental anguish, mental stress, [and] disruption of due process" from each defendant, including the unnamed mailroom workers.  Finally, the plaintiff seeks costs and fees and "any further relief this Honorable court deems just and proper."  (Doc. No. 24.)

Defendants Tennis and Dougherty in their motion to dismiss raise one ground for dismissal: The plaintiff has failed to state a claim for which relief can be granted because the defendants did not impede the plaintiff's access to the courts and DC-ADM fulfills a correctional facility's obligation to provide inmates with access to the courts.  The defendants contend that the plaintiff's failure to submit the requisite statement to the Court of Common Pleas was not because the defendants violated his constitutional rights, but because he failed to manage his funds properly so as to have sufficient postage to post the statement. Although the defendants do not raise as a ground for dismissal their immunity for acts in their official capacity under the Eleventh Amendment, the court shall consider it.  Furthermore, defendant Tennis has

9

failed to raise as a ground for dismissal his lack of personal involvement in the events underlying the plaintiff's claim, but the court shall consider it.  Finally, the court shall <u>sua</u> <u>sponte</u> consider the allegations in the plaintiff's complaint against the unspecified mailroom employees and recommend that they be dismissed for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii) (2005).

### 1.    Plaintiff's Failure to State a Claim

In a civil rights case predicated upon a denial of access to the courts, the plaintiff must show that his claim involved actual access to the courts and an occasion on which he was actually denied such access.  <u>Lewis v. Casey</u>, 518 U.S. 343, 351-53 (1996); <u>Hudson v. Robinson</u>, 678 F.2d 462, 466 (3d Cir. 1982); <u>Kershner v. Mazurkiewicz</u>, 670 F.2d 440, 444 (3d Cir. 1982) (en banc).  An implicit factor in this showing is that the plaintiff suffer irreparable injury as a result of the constitutional deprivation.  <u>Hudson</u>, 678 F. 2d at 466; <u>Kershner</u>, 670 F. 2d at 445.  The plaintiff in this case has suffered an irreparable injury because the Court of Common Pleas waived his issues on appeal for failing to fulfill its order. However, the issue remains whether the plaintiff's irreparable injury was the result of a constitutional deprivation.

It is well settled "that prisoners have a constitutional right of access to the courts." <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977).  Not only are states prohibited from impeding an inmate's access to the courts, but they also have "affirmative obligations to assure all prisoners meaningful access to the

courts. It is indisputable that indigent inmates must be provided, at state expense, with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them." Id. at 822-25. But states may consider economic factors in determining the methods by which meaningful access to the courts is provided so long as there is no total deprivation of that right. Id. at 825. Consequently, although states must provide indigent inmates with some sort of free postage, neither indigent nor non-indigent inmates have a constitutional right to unlimited free postage. White v. White, 886 F.2d 721, 723 (4th Cir. 1989); Bond v. Dunn, No. 89-6181, 1989 WL 149988, at *1 (6th Cir. 1989); Sawyer v. Rickets, No. 87-1883, 1988 WL 90047, at *2 (9th Cir. 1988); Chandler v. Coughlin, 763 F.2d 110, 114 (2d Cir. 1985); Hoppins v. Wallace, 751 F.2d 1161, 1162 (11th Cir. 1985); Guajardo v. Estelle, 580 F.2d 748, 762-63 (5th Cir. 1978); Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978); Bach v. Coughlin, 508 F.2d 303, 307-08 (7th Cir. 1974); Peterkin v. Jeffes, 661 F.Supp. 895, 916 (E.D. Pa. 1987), aff'd in part and rev'd in part on other grounds by 855 F.2d 1021 (3d Cir. 1988); see Kaestel v. Lockhart, 746 F.2d 1323, 1325 (8th Cir. 1984).

The defendants, in implementing DC-ADM 803, have met their constitutional burden.  The policy does not impede inmates from accessing the courts because it provides for unlimited posting privileges between inmates, their attorneys, and public officials.  The policy also allows each inmate to post free up to ten letters per month, which is more than the

Constitution requires.  See, e.g., Sawyer, 1988 WL at *2 (prison provides three free postings per month); Chandler, 763 F.2d at 112 (prison provides five free postings per month); Hoppins, 751 F.2d at 1162 (prison provides two free postings per week); Twyman, 584 F.2d at 359 (same).  Indigent inmates, in addition to their ten free postings, may incur debt up to $10.00 per month to pay for postage.  DC-ADM 803 clearly defines indigence and specifically excludes from the definition of indigence those inmates who lack postage through their own improvidence.

The plaintiff was unable to post his statement to the Court of Common Pleas because he was not responsible, not because the defendants or the DOC policy impeded him.  He was employed and earned wages, yet he lacked the money for postage because he spent his earnings at the commissary and on cable television.  The plaintiff did not qualify for indigent postage benefits, and it was, therefore, his responsibility to ensure he had money for postage.  He did not and suffered the consequences of his failure. In sum, DC-ADM 803 and the defendants did not in any way hinder the plaintiff's right of access to the courts, and the defendants' motion to dismiss the plaintiff's claim should be granted for failure to state a cognizable claim.[2]

---

[2]The defendants argue that DC-ADM 803 is constitutional because it is "is reasonably related to legitimate penological interests" under the factors established by the Supreme Court in Turner v. Safely, 482 U.S. 78, 89-91 (1987), superseded by statute on other grounds by the Religious Land Use & Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc-3 (2000).  The court, however, need not reach the Turner analysis because it " is appropriate

28 U.S.C. § 1915(e)(2)(B)(ii) authorizes a court to dismiss <u>sua</u> <u>sponte</u> the claim of an inmate proceeding in forma pauperis where that inmate has failed to state a claim. In this case, the plaintiff has named as defendants, in addition to defendants Tennis and Dougherty, "all others working in the mail room"; however, in neither his complaint nor his amended complaint has the plaintiff specified who these other alleged individuals are, nor has he undertaken any other action to identify the mailroom employees and serve the suit upon them. Thus, the court does not have a responsive pleading from them because they remain unidentified and have not yet been brought in as parties to this case. Under § 1915(e)(2)(B)(ii), the court can nonetheless consider whether the plaintiff has stated a claim for which relief can be granted against these unnamed defendants. For the reasons specified above concerning defendants Tennis and Dougherty, the plaintiff has not. Consequently, the court should dismiss <u>sua</u> <u>sponte</u> the plaintiff's complaint against "all others working in the mail room" for failing to state a claim.

---

only in cases where a prison policy is impinging on inmates' constitutional rights. <u>Turner</u>, thus, assumes as a predicate that the plaintiff inmate has demonstrated that a constitutionally protected interest is at stake." <u>DeHart v. Horn</u>, 227 F.3d 47, 51 (3d Cir. 2000). For the reasons discussed above, the plaintiff has failed to demonstrate that a constitutionally protected interest was <u>at stake</u> because DC-ADM 803 did not impinge in his rights to access the court in the first place.

## 2.    Eleventh Amendment Immunity

Federal courts cannot consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241 (1985); Edelman v. Jordan, 415 U.S. 651, 662 (1974).  This immunity extends to suits asserting civil rights violations where the state is named as a defendant.  Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir.1981).  "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power."  Chittister v. Dep't of Cmty. & Econ. Dev., 226 F.3d 223, 226 (3d Cir.2000).  The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment.  "By statute Pennsylvania has specifically withheld consent [to be sued]." Laskaris, 661 F.2d at 25 (citing PA. CONS. STAT. ANN. § 8521(b)).  Section 1983 does not "abrogate the Eleventh Amendment immunity of the States."  Quern v. Jordan, 440 U.S. 332, 345 (1979).

Furthermore, an essential element of any claim under § 1983 is that the alleged wrongdoing was committed by a "person." 42 U.S.C. §1983. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."  Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

Consequently, the defendants' motion to dismiss the plaintiff's complaint

14

should be granted on this ground with respect to the plaintiff's claim against defendants Tennis and Dougherty in their official capacities.   All of the defendants' actions in the events underlying the plaintiff's claim, as recited by the plaintiff, were undertaken in their roles as superintendent and business manager of SCI-Rockview.

### 3.    Defendant Tennis's Lack of Personal Involvement

To state a claim under §1983, the plaintiff must show that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. §1983; Morse v. Lower Merion Sch. Dist., 132 F.3d 902 (3d Cir. 1997); Maine v. Thiboutot, 448 U.S. 1 (1980).  Liability under §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or actual knowledge and acquiescence. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997) (citing Rhode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

Moreover, relief cannot be granted against a defendant pursuant to §1983 based solely on the theory of respondeat superior or the fact that the defendant was the supervisor or superior of the person whose conduct actually deprived the plaintiff of one of his federally protected rights under color of state law.  Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976); Goode v.

15

Rizzo, 506 F.2d 542, 550 (3d Cir. 1974), rev'd on other grounds, Rizzo v. Goode, 423 U.S. 362 (1976).

Consequently, the defendants' motion to dismiss the plaintiff's complaint should be granted on this ground with respect to the plaintiff's claim against defendant Tennis in his individual capacity because defendant Tennis lacked personal involvement in the alleged deprivation of the plaintiff's constitutional rights.[3]  The facts as recited by the plaintiff do not indicate that defendant Tennis had any role in preventing the posting of the plaintiff's legal mail.  As superintendent, defendant Tennis would likely be responsible for ensuring that his personnel followed DC-ADM 803, but that would entail enforcing the policy against all inmates and not specifically against the plaintiff.  Liability on this basis could only be predicated on respondeat superior.  Indeed, defendant Tennis's sole involvement in the events underlying the plaintiff's claim is that he upheld the initial review denying the plaintiff's grievance.  While that shows defendant Tennis's knowledge of the plaintiff's alleged constitutional deprivation, it is not acquiescence merely to uphold an initial finding adverse to the plaintiff's claim.

---

[3]The motion to dismiss cannot be granted on this ground with respect to defendant Dougherty because the facts alleged by the plaintiff show that he was personally involved: Defendant Dougherty signed at least one memorandum covering the plaintiff's returned mail.

16

**IV.     Plaintiff's Motion for a Restraining Order**

In light of the foregoing, the plaintiff's motion for a temporary restraining order (Doc. No. 18) should also be dismissed as moot.

**IV.     Conclusion**

On the basis of the foregoing,     **IT IS RECOMMENDED THAT:**

1.      defendants Tennis's and Dougherty's motion to dismiss the plaintiff's amended complaint (Doc. No. 37) be **GRANTED**; and

2.      the court <u>sua</u> <u>sponte</u> **DISMISS** the plaintiff's amended complaint against "all others working in the mail room" on the same grounds advanced by defendants Tennis and Dougherty; and

3.      the plaintiff's motion for a temporary restraining order (Doc. No. 18) be **DISMISSED** as moot.

S/ Malachy E. Mannion
**MALACHY E. MANNION**
**United States Magistrate Judge**

Date: February 22, 2006
O:\shared\REPORTS\2005 Reports\05-0225.01.wpd